**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CUSHMIR McBRIDE, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 24-CV-4178 |
| | : | |
| L. LAURIE, *et al.*, | : | |

<u>**MEMORANDUM**</u>

SÁNCHEZ, J.                                           SEPTEMBER 20, 2024

Plaintiff Cushmir McBride brings this civil action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 392 (1971),[1] based on allegations that he was subjected to unconstitutional conditions of confinement during an approximate seven-week period while he was housed as a pretrial detainee in the Special Housing Unit ("SHU") at the Federal Detention Center in Philadelphia ("FDC"). Because there is no *Bivens* remedy available to McBride, the Court dismisses his complaint.

**I.     FACTUAL ALLEGATIONS[2]**

McBride, a twenty-year old Black male, alleges he has been detained at the FDC since April 5, 2021.[3] Compl. at 5-6, ¶ 16. He brings this lawsuit against Acting Warden L. Laurie, eight

---

[1] "[A]ctions brought directly under the Constitution against federal officials have become known as '*Bivens* actions.'" *Vanderklok v. United States*, 868 F.3d 189, 198 (3d Cir. 2017).

[2] The following allegations are taken from the Complaint and "Complaint Addendum," which McBride clearly intended file with the first part of his Complaint but which he sent later because he lacked adequate postage. *See* ECF Nos. 1, 5. The Court adopts the pagination supplied to McBride's filings by the CM/ECF docketing system.

[3] McBride filed the instant civil action on August 12, 2024, when he was a pretrial detainee. Compl. at 5-6, 9. Following receipt of the Complaint, the Clerk's Office directed McBride to either pay the fees to commence the case or seek leave to proceed *in forma pauperis*. ECF No. 3. McBride filed a motion to proceed *in forma pauperis* but subsequently paid the fees in full on September 12, 2024. ECF Nos. 4, 7. The docket for McBride's federal criminal case reflects that McBride was sentenced on September 5, 2024, so he is now a convicted and sentenced prisoner. *United States v. McBride*, Crim. A. No. 21-173-1 (E.D. Pa.). ECF No. 168.

other prison officials—Corrections Officer Ryan Williams, Corrections Officer R. Colon, Corrections Officer Max, Corrections Officer O'Keefe, Corrections Officer Exume, Lieutenant Maynard, Lieutenant Elisabeth Shannon, and Lieutenant Latoya Jones—and a Registered Nurse identified as Nishi. *Id.* at 1, 3-5.

McBride was housed in the SHU from July 3, 2022 through August 25, 2022 for attempting to bribe a corrections officer even though he claims to have been found "not guilty" of that infraction. *Id.* at 6, ¶¶ 17-18. He alleges he was "subjected to repeated physical and psychological abuses" during this time, including pressure to act as an informant for the FDC's Special Investigation Service ("SIS"). *Id.* at 6, ¶¶ 18-19. Beginning July 21, 2022, McBride sought medical attention "for extreme irritation to [his] left knee." *Id.* at 6, ¶ 20. Defendant Lt. Shannon "said she would have medical staff examine [McBride]," but "medical staff" failed to do so. *Id.* The "irritation . . . ultimately exacerbated into a mercer/staph infection" that McBride contends caused him permanent injury. *Id.* McBride complained to Defendant Williams about needing medical treatment for his knee, but Williams allegedly ignored his request and stated, "since you don't want to provide them with information to help them i.e. SIS so they not going to help you." *Id.* at 7, ¶ 21. Similarly, other Defendants ignored or disregarded McBride's complaints for medical attention, including Defendant Jones, who at one point allegedly told McBride that "Williams said your [sic] off limits and not to do nothing for you." *Id.* at 7, ¶ 22.

On or about August 2, 2022, Defendant Nishi examined McBride's knee, "finding it to become purpleish, leaking puss, blood and formed a hole." *Id.* at 7, at ¶ 23. Nishi allegedly told McBride that, since it was a Friday, he could not be helped until Monday "and that's only if I choose to see you then," and that Nishi then "laughed and walked away." *Id.* at 7-8, ¶ 23. Five days later, Defendant Jones looked at McBride's knee, said it looked like he needed to go to a

hospital, and that Jones would go "see what's going on right now." *Id.* at 8, ¶ 24. Fifteen minutes later, when McBride called out to Jones for medical treatment, Jones replied that it was "out of [her] hands." *Id.* To get medical attention, McBride dropped bloody homemade bandages on the floor "to catch the attention of the camera," following which "full staff" responded. *Id.* at 8, ¶ 25. Nishi examined McBride at that time and rewrapped his knee but returned him to the cell "without pain relief or medicine for the infection." *Id.* at 8-9, ¶ 25.

McBride also alleges he was subjected to excessive force on August 9, 2022. *Id.* at 9, ¶ 26. On that date, Defendants Jones, Max, O'Keefe, and Williams responded to McBride's screams for medical assistance. *Id.* Max helped McBride to his feet, "purportedly to be taken to medical." *Id.* Once McBride was outside the cell, Williams allegedly grabbed him, slammed him to the floor, and dragged him "handcuffed to the back down the floor," while slamming him into a wall for approximately sixty feet. *Id.* Williams also punched McBride in his face, head, and mouth while wearing "UFC pro fighter specially hardened knuckles gloves." Compl. Addendum at 3. Although another officer intervened to prevent Williams from further injuring McBride, ten minutes thereafter Williams dragged McBride to an empty cell where he slapped him, slammed him to the floor, and kicked him in the face, body, and groin with the assistance of Defendants Colon and O'Keefe. *Id.* at 4, ¶ 26. These Defendants also slammed McBride's head into the floor while Williams squeezed McBride's infected knee, causing McBride to scream in pain, and punched him. *Id.* at 5, ¶ 26.

McBride sustained several injuries, for which he claims to have been denied medical treatment for three days. *Id.* at 3-5, 7. He also alleges Williams and O'Keefe threatened to retaliate against him if he told anyone about what happened. *Id.* at 6, ¶ 28. McBride nevertheless discussed the incident with a case manager and nurse. *Id.* at 7, ¶¶ 29-30. He also attempted to use the

3

administrative remedy process to grieve his concerns but claims his administrative requests were thrown in the trash and disregarded. *Id.* at 8, ¶ 31. Williams allegedly threatened to retaliate against McBride after learning that McBride sought to report him and apparently had his family post something about Williams on social media. *Id.* at 8-9, ¶¶ 32-33.

Thereafter, on August 19, 2022, Defendant Max told McBride he would be moved to a "one man cell until things die down." *Id.* at 9. Max then brought McBride to a cell with another inmate in it. *Id.* When McBride questioned why he was not being moved to a one-man cell as promised, Max allegedly opened the door to the cell, pushed McBride in, refused to removed McBride's handcuffs, removed the other inmate's handcuffs, and told that inmate to "do what you supposed to do." *Id.* at 10. The other inmate "began to physically attack" McBride while Max watched, causing McBride physical injuries and emotional distress. *Id.* at 10-11. McBride claims that, following this attack, Williams grabbed him, threw him into a wall, smacked him and choked him. *Id.* at 11, ¶ 34. When McBride was brought to the medical department for treatment, Defendant Maynard allegedly grabbed and choked him in the presence of the presiding doctor while directing the doctor to falsify McBride's medical records to cover up the source of his injuries. *Id.* at 12. The next week, McBride was transferred to MDC-Brooklyn for his safety. *Id.* at 12, ¶ 35.

McBride brings *Bivens* claims for various constitutional violations based on these allegations. Compl. at 2. He describes his claims as stemming "from the apparent culture, atmosphere of racial bias, rape[,] unprofessionalism, abusive language, threats, intimidation, provocation, retaliation and arbitrary acts of physical violence inflicted on pre-trial detainees"

confined at FDC.  *Id.* at 5, ¶ 15; Compl. Addendum at 12-17.  McBride seeks damages, injunctive

relief, and declaratory relief.[4]  Compl. at 5, ¶ 15; Compl. Addendum at 17-18.

## II.    STANDARD OF REVIEW

Section 1915A requires that the Court "review, before docketing, if feasible or, in any

event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks

redress from a governmental entity or officer or employee of a governmental entity."  28 U.S.C. §

1915A(a).  In doing so, the Court must dismiss a complaint or any portion thereof that "is frivolous,

malicious, or fails to state a claim upon which relief may be granted." *Id.* § 1915A(b)(1).  Whether

a complaint fails to state a claim under § 1915A(b)(1) is governed by the same standard applicable

to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *See Neal v. Pa. Bd. of Prob.*

*& Parole*, No. 96-7923, 1997 WL 338838, at *1 (E.D. Pa. June 19, 1997); *see also Tourscher v.*

*McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).  Accordingly, the Court must determine whether

the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  "At this

early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as

true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that]

---

[4] McBride lacks standing to seek prospective relief in the form of an injunction or declaration because his claims are based on past harm.  *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) (standing to pursue injunctive relief depends on whether plaintiff is "likely to suffer future injury"); *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011) ("Allegations of possible future injury are not sufficient to satisfy Article III." (internal quotations omitted)); *Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) (*per curiam*) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct."); *Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another.").  Accordingly, the Court will dismiss these claims without prejudice.  The discussion below focuses on whether McBride has stated *Bivens* claims for damages.

complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, --- F.4th ---, 2024 WL 3820969 (3d Cir. Aug. 15, 2024).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.  As McBride is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III.   DISCUSSION

*Bivens* provides a judicially recognized damages remedy for constitutional violations committed by federal actors in highly limited circumstances.  *Egbert v. Boule*, 596 U.S. 482, 486 (2022); *Ziglar v. Abbasi*, 582 U.S. 120, 130-31 (2017).  Since *Bivens* was decided in 1971, the Supreme Court "has repeatedly refused to extend *Bivens* actions beyond the specific clauses of the specific amendments [of the Constitution] for which a cause of action has already been implied, or even to other classes of defendants facing liability under those same clauses." *Vanderklok*, 868 F.3d at 200; *see Egbert*, 596 U.S. at 501.  The Supreme Court has recognized an implied private action against federal officials in only three cases:  (1) *Bivens* itself, which recognized an implied cause of action for violation of the Fourth Amendment's right against unreasonable searches and seizures; (2) *Davis v. Passman*, 442 U.S. 228 (1979), which recognized a claim for gender discrimination in the employment context under the Fifth Amendment's Due Process Clause; and (3) *Carlson v. Green*, 446 U.S. 14 (1980), which recognized a claim against prison officials for inadequate medical care in the prison context under the Eighth Amendment.  *See Dongarra v. Smith*, 27 F.4th 174, 180 (3d Cir. 2022); *see also Abbasi*, 582 U.S. at 131 ("These three cases - *Bivens*, *Davis*, and *Carlson* - represent the only instances in which the [Supreme] Court has

approved of an implied damages remedy under the Constitution itself."). "To preserve the separation of powers, the Court has 'consistently rebuffed' efforts to extend *Bivens* further . . . [because] [t]he Constitution entrusts Congress, not the courts, with the power to create new federal causes of action and remedies." *Dongarra*, 27 F.4th at 180 (citing *Hernandez v. Mesa*, 589 U.S. 93, 101 (2020)); *see also Xi v. Haugen*, 68 F.4th 824, 832 (3d Cir. 2023) ("In the fifty-two years since *Bivens* was decided, . . . the Supreme Court has pulled back the reins to what appears to be a full stop and no farther.").

"Reflecting these concerns, the Supreme Court has set forth a two-step inquiry to determine the availability of *Bivens* remedies in a particular case." *Kalu v. Spaulding*, 113 F.4th 311, 326 (3d Cir. 2024). "First, [courts] ask whether the 'case presents a new *Bivens* context'—*i.e.*, whether the 'case is different in a meaningful way from previous *Bivens* cases decided by' the Supreme Court"—using only *Bivens*, *Davis*, and *Carlson* as a benchmark as well as a "broad" understanding of what constitutes a new context. *Id.* (quoting *Abbasi*, 582 U.S. at 139). The non-exclusive list of factors to consider here includes:

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* (quoting *Abbasi*, 582 U.S. at 139-40). "Whether a context is new is an 'easily satisfied' test because 'a modest extension of the *Bivens* action is still an extension[,]'" meaning "[e]ven 'significant parallels to one of the Supreme Court's previous *Bivens* cases' may not be enough." *Henry v. Essex Cnty.*, 113 F.4th 355, 361 (3d Cir. 2024) (cleaned up) (quoting *Abbasi*, 582 U.S. at 147-49); *Fisher*, 2024 WL 3820969, at *5 ("[A] case can differ meaningfully from *Bivens, Davis,* and *Carlson* even when it involves the same constitutional right as one of those cases.").

7

If the context is new, courts proceed to the second step of the inquiry, which "ask[s] whether there are 'special factors counselling hesitation' in extending *Bivens*" with a focus "'on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed.'" *Kalu*, 113 F.4th at 326 (quoting *Abbasi*, 582 U.S. at 136); *see also Fisher*, 2024 WL 3820969, at *4 ("*Egbert* now requires us to ask whether 'the Judiciary *is at least arguably less equipped* than Congress' to weigh the costs and benefits of a damages action." (quoting *Egbert*, 596 U.S. at 492)).  Special attention is given to the existence of an alternative remedial structure and separation-of-powers concerns. *Kalu*, 113 F.4th at 326.  An administrative grievance procedure such as the Bureau of Prisons' Administrative Remedy Program "is an alternative remedy that forecloses a *Bivens* action." *Fisher*, 2024 WL 3820969, at *4 & *7 (emphasis omitted).  Further, if there is any reason to think Congress might be better situated to weigh the costs and benefits of a damages action, courts may not do so. *Id.* at *5.  That uncertainty alone forecloses *Bivens* relief. *Id.* at *4.  "To sum up, . . . : unless a case is indistinguishable from *Bivens, Davis*, or *Carlson*, a damages remedy may be created by Congress, but not by the courts." *Id.* at *5.

The Court understands McBride to raise a host of constitutional claims challenging the conditions in which he was confined as a pretrial detainee, *i.e.*, claims based on his placement in the SHU, claims for excessive force, failure to protect claims, retaliation claims, and claims that prison officials were deliberately indifferent to his need for medical treatment for his knee while he was housed in the SHU.  However, no *Bivens* remedy exists for a prisoner's claims challenging placement in restrictive housing, claims based on retaliation, or claims predicated on abuse suffered at the hands of corrections officers or other inmates. *Egbert*, 596 U.S. at 498 ("[T]here is no *Bivens* cause of action for Boule's First Amendment retaliation claim."); *Kalu*, 113 F.4th at

327-41 (no *Bivens* remedy for prisoner's claims based on inhumane conditions of confinement or based on assault by a prison official); *Fisher*, 2024 WL 3820969, at *7 (holding "that no constitutional claim lies against federal officials who fail to protect a prisoner from the violence of other inmates"); *Bistrian v. Levi*, 912 F.3d 79, 94 (3d Cir. 2018) (holding that there is no *Bivens* cause of action for a pretrial detainee's challenge to punitive detention under a more liberal application of *Bivens* prior to *Egbert*), *abrogated as recognized in Fisher*, 2024 WL 3820969, at *4. *Bivens* also does not permit a remedy against a prison warden based on theories of supervisory liability. *Kalu*, 113 F.4th at 346 ("Allowing Kalu to proceed with his claim against Warden Spaulding, as a supervisor, for his handling of Kalu's sexual assault allegation would invariably invite intrusion administration of federal prison policies—determinations ranging from housing and safety, to discipline and resources.").

With relief clearly foreclosed for most of McBride's claims, the only remaining question is whether a *Bivens* remedy exists for McBride's deliberate indifference claims against the Defendants other than Acting Warden Laurie based on their alleged failure to provide medical treatment for his knee. *Carlson* is most relevant here. *Carlson* involved constitutional claims brought by a prisoner's estate against federal prison officials for failure to provide adequate medical treatment leading to the prisoner's death. 446 U.S. at 17 n.1. The complaint in *Carlson* alleged prison officials:

> being fully apprised of the gross inadequacy of medical facilities and staff at the Federal Correction Center in Terre Haute, Ind., and of the seriousness of [the prisoner's] chronic asthmatic condition, nonetheless kept him in that facility against the advice of doctors, failed to give him competent medical attention for some eight hours after he had an asthmatic attack, administered contra-indicated drugs which made his attack more severe, attempted to use a respirator known to be inoperative which further impeded his breathing, and delayed for too long a time his transfer to an outside hospital. The complaint further alleges that [the prisoner's] death resulted from these acts and omissions, that petitioners were deliberately indifferent

to [his] serious medical needs, and that their indifference was in part attributable to racial prejudice.

446 U.S. at 17 n.1.  The *Carlson* court "held that the Eighth Amendment Cruel and Unusual Punishments Clause gave [the prisoner's estate] a damages remedy for failure to provide adequate medical treatment."  *Abbasi*, 582 U.S. at 131.

Notably, *Carlson* involved a claim arising under the Eighth Amendment, while McBride's claims are based on the Fifth Amendment because he was a pretrial detainee held in a detention center during the events giving rise to his claims.  *See Bell v. Wolfish*, 441 U.S. 520, 530, 541 (1979) (applying the Fifth Amendment to claims challenging conditions of pretrial detention).  The Supreme Court has treated this distinction as a "new context" for purposes of the *Bivens* inquiry, and declined to extend *Bivens* to claims of detainee mistreatment.  *Abbasi*, 582 U.S. at 148 ("The constitutional right is different here, since *Carlson* was predicated on the Eighth Amendment and this claim is predicated on the Fifth.").  As explained by the Court of Appeals for the Ninth Circuit, constitutional claims presented by pretrial detainees held in detention centers present a "significant difference in setting" to those raised by convicted and sentenced prisoners because:

> Jails are typically smaller than prisons, they are not intended for long-term detention, and they house a different class of inmates.  Prisons and jails also may involve different levels of risk to inmate safety.  Because of these differences, jails and prisons are operated differently.

*Marquez v. C. Rodriguez*, 81 F.4th 1027, 1032 (9th Cir. 2023) (holding that failure to protect claim brought by a pretrial detainee under the Fifth Amendment was meaningfully different than *Carlson*); *see also Stanard v. Dy*, 88 F.4th 811, 818 (9th Cir. 2023) ("There is little doubt that Stanard's Fifth Amendment claim [challenging the quality of medical care he received as a detainee] does present a new context.").  The Court of Appeals for the Eleventh Circuit, too, has

concluded that conditions claims raised by a pretrial detainee, which are governed by a different amendment than those at issue in *Carlson*, present a new *Bivens* context. *Johnson v. Terry*, 112 F.4th 995, 1013 (11th Cir. 2024) ("Johnson's claim based on the medical care he received after being attacked by Phillip is predicated on a different constitutional right than the one in *Carlson* . . . . That alone is enough for the claim to present a new context."). Consistent with these cases and the approach taken by most courts that have recently considered the issue, the Court concludes the differences between the relevant constitutional provisions and realities of confinement pertaining to pretrial detainees and those pertaining to convicted and sentenced prisoners are a sufficient basis from which to conclude that McBride's claims for deliberate indifference to his medical needs present a new *Bivens* context. *See Iotova v. Quay*, No. 19-1957, 2024 WL 923931, at *11 (E.D.N.Y. Mar. 4, 2024) ("Plaintiffs' allegations related to inadequate health care [under the Fifth Amendment], while presenting a closer call, also present a new *Bivens* context."), *report and recommendation adopted as modified*, 2024 WL 1513642 (E.D.N.Y. Apr. 8, 2024); *McIntyre v. U.S. Marshal Serv.*, No. 18-1268, 2023 WL 2447424, at *4 (D.N.J. Mar. 10, 2023) ("Neither *Bivens* itself, which arose under the Fourth Amendment, nor *Carlson*, which arose under the Eighth Amendment[], recognized a cause of action for money damages under the Fifth Amendment," and *Davis*'s recognition of an implied action under the Fifth Amendment concerned gender discrimination in the employment context, not matters related to treatment of federal pretrial detainees.); *Hasbajrami v. Glogau*, No. 20-00084, 2022 WL 4652337, at *7 (W.D. Pa. Sept. 9, 2022) ("The Supreme Court has expressly stated that claims about abuse of pretrial detainees under the Fifth Amendment present a new *Bivens* context."), *report and recommendation adopted*, 2022

WL 4609255 (W.D. Pa. Sept. 30, 2022).[5] *But see Carattini v. Behun*, No. 21-9373, 2024 WL 3274663, at *6 (S.D.N.Y. July 2, 2024) ("[T]he fact that Plaintiff's *Bivens* claim for deliberate indifference to serious medical needs is brought under the Fifth Amendment as opposed to the Eighth Amendment claim recognized in *Carlson* does not mean that the claim arises in a new context."); *Mirvis v. Quay*, No. 19-2573, 2023 WL 5671935, at *6 (E.D.N.Y. Sept. 1, 2023) (recognizing "a Fifth Amendment claim for deliberate indifference to [a pretrial detainee's] serious medical needs under *Bivens*.").

In any event, other differences distinguish this case from *Carlson*, such as "[t]he severity, type, and treatment of [McBride's] injuries[, which] were different from those of the plaintiff in *Carlson*." *Johnson*, 112 F.4th at 1014.  In *Carlson*, prison officials failed to provide and/or delayed treatment after the prisoner suffered from an asthma attack, causing the prisoner's death.  In contrast, the injury alleged here, though serious, was an irritation that developed into infection over time, as opposed to a failure to provide medical care for an acute medical emergency.  More importantly, in contrast to the plaintiff in *Carlson*, McBride was housed in the SHU at the time he required medical attention, which implicates additional management concerns for prison staff.

---

[5] To the extent courts in the Third Circuit have found the distinction between pretrial detainees and convicted and sentenced prisoners irrelevant, they have relied on *Bistrian*, which was subsequently abrogated by *Egbert*, as recognized in *Fisher*. *See Fisher*, 2024 WL 3820969, at *4 ("Defendants respond that *Bistrian* and *Shorter* have been abrogated by the Supreme Court's later decision in *Egbert v. Boule*.  We agree.  *Egbert* tightened the *Ziglar* test and, in doing so, made a strong statement that lower courts should not extend *Bivens* beyond the contexts recognized in *Bivens, Davis*, and *Carlson*."); *Sanders v. Marler*, No. 18-5477, 2022 WL 2703597, at *10 (E.D. Pa. July 12, 2022) ("[A]lthough *Carlson* recognized a *Bivens* claim under the Eighth Amendment and Mr. Sanders' claim for deliberate indifference arises under the Fifth Amendment because he was a pretrial detainee, I conclude that this case does not present a new *Bivens* context" based on *Bistrian*); *see also Bistrian v. Levi*, No. 08-3010, 2023 WL 6927327, at *10 (E.D. Pa. Oct. 19, 2023) ("This Court is bound by *Bistrian II*—the Third Circuit's directive in this case—and subsequent cases.").  These courts also did not have the benefit of the Third Circuit's recent decisions in *Fisher* and *Kalu*, which limited and clarified *Bivens*'s application in the context of claims challenging prison conditions.

Additionally, the passage of the Prison Litigation Reform Act ("PLRA") and the existence of the BOP's Alternative Remedy Program, both of which post-date *Carlson*, are special factors that render this case a new context because they were not considered by the Supreme Court. *Id.* at 1013 ("[W]e find that the context of these claims is different from the context of the claim in *Carlson* because there the Court did not consider whether there were alternative remedies under the current alternative remedy analysis."); *Kalu*, 113 F.4th at 328 ("Because the PLRA and the BOP's remedy program are 'features that were not considered' by the Supreme Court when it decided *Carlson*, they present an additional reason to conclude that Kalu's claim arises in a new context." (quoting *Abbasi*, 582 U.S. at 148)).

In sum, McBride seeks to extend *Bivens* to a new context.  Accordingly, the Court must consider whether special factors preclude the extension of a *Bivens* remedy to his claims.  The United States Court of Appeals for the Third Circuit has held that the existence of the Bureau of Prisons' Administrative Remedy Program "precludes a *Bivens* remedy." *Fisher*, 2024 WL 3820969, at *7.  McBride alleges his attempts to use this program were thwarted, but it is not clear that the failure of the remedy in McBride's specific case impacts the *Bivens* analysis given the general existence of the program at the facility.  *See Egbert*, 596 U.S. at 493 ("If there are alternative remedial structures in place, that alone, like any special factor, is reason enough to limit the power of the Judiciary to infer a new *Bivens* cause of action." (quotations omitted)); *Kalu*, 113 F.4th at 333 (explaining the "presence of an alternative remedial structure" precludes application of *Bivens* even if the remedies are not as effective as a damages remedy, and that BOP's administrative remedial structure was a special factor counselling against a *Bivens* extension where inmate unsuccessfully attempted to use the program).  In any event, other factors also counsel against extending *Bivens*.  Relevant here, Congress's "omission of a cause of action against

individual officials" in the PLRA suggests Congress did not intend to create a remedy for constitutional claims beyond *Carlson*. *Kalu*, 113 F.4th at 335-36. Furthermore, "[t]he Supreme Court has long recognized that, because 'the operation of our correctional facilities is peculiarly the province of the Legislative and Executive Branches,' separation of powers and federalism concerns support conferring 'wide-ranging deference' to prison administrators' policy and operational decisions," which suggests courts are not well suited to fashion remedies in this context. *Kalu*, 113 F.4th at 336. Accordingly, the Court may not imply a *Bivens* remedy, and McBride may not proceed on his deliberate indifference claims. *See Stanard*, 88 F.4th at 813 (affirming dismissal of Fifth Amendment claims alleging detainee's rights "were violated by various federal prison officials when he was denied treatment for Hepatitis C," but reversing dismissal of Eighth Amendment claims based on those allegations); *Randle v. Gonzalez*, No. 23-96, 2024 WL 1655382, at *2 (N.D. Ind. Apr. 17, 2024) (dismissing upon screening claims brought by pretrial detainee for, among other things, lack of medical care: "Randle's claim, while similar to the implied cause of action recognized in *Carlson*, arises from a different constitutional provision"); *Kaid v. Tatum*, No. 20-3643, 2024 WL 946949, at *10 (S.D.N.Y. Jan. 24, 2024) (declining to imply *Bivens* remedy for medical claims raised by pretrial detainee and citing cases), *report and recommendation adopted as modified*, 2024 WL 639331 (S.D.N.Y. Feb. 15, 2024); *Choice v. Michalak*, No. 21-0060, 2022 WL 4079577, at *8 (N.D. Ill. Sept. 6, 2022) ("Choice's inadequate medical care claim under the Fifth Amendment presents a new *Bivens* context, and at least three special factors—an alternative remedy, congressional silence, and the risk of interference with the BOP's administration—counsel against recognizing a *Bivens* remedy."); *see also Bennett v. Washington*, No. 23-00126-JHM, 2024 WL 2884573, at *3 (W.D. Ky. June 7, 2024) ("It seems odd that a federal pretrial detainee who is generally afforded more protection

14

under our Constitution and laws cannot bring a deliberate-indifference-to-medical-needs claim against a federal officer under *Bivens*, but a convicted prisoner can.  However, in light of the current United States Supreme Court and Sixth Circuit case law, the Court must dismiss Plaintiff's Fifth Amendment deliberate-indifference claim brought under *Bivens* against Defendant Thiel." (citation omitted)); *see also Kalu*, 113 F.4th at 332 ("[T]he seriousness of a federal official's misconduct does not authorize us to change the remedies available . . . .").

IV.     **CONCLUSION**

For the foregoing reasons, the Court will dismiss McBride's claims for damages with prejudice because special factors counsel against implication of a *Bivens* remedy.  The Court will dismiss McBride's claims for declaratory and injunctive relief for lack of standing.  McBride will not be given leave to amend because he cannot cure the deficiencies in his claims.  An Order follows, which shall be docketed separately.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.